# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Meredith Cook, ) | Civil Action No. 6:14-cv-01294-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Meredith Cook ("Plaintiff") filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (ECF No. 1.)

This matter is before the court for review of the Report and Recommendation (the "Report") of United States Magistrate Judge Kevin F. McDonald, issued in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a) D.S.C. (ECF No. 39.) On July 30, 2015, the Magistrate Judge recommended affirming the Commissioner's final decision denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Id. at 43.) Plaintiff timely filed her Objections to the Magistrate Judge's Report and Recommendation (the "Objections"), which Objections are currently before the court. (ECF No. 43.) For the reasons set forth below, the court **ACCEPTS** the Report and **AFFIRMS** the final decision of the Commissioner denying Plaintiff's claim for SSI.

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Magistrate Judge's Report contains a thorough recitation of the relevant factual and procedural background of this matter. (See ECF No. 39 at 5–19.)  The court concludes, upon its

1

own careful review of the record, that the Report's factual and procedural summation is accurate, and the court adopts this summary as its own. The court will only reference herein background pertinent to the analysis of Plaintiff's claims.

Plaintiff was born on December 14, 1972, and is presently 42 years old. (Admin. R. at 91.) Plaintiff filed an application for SSI on April 29, 2004, alleging disability since June 1, 1998, due to fibromyalgia, myofascial pain syndrome, restless legs syndrome, depression, blood clots from being mauled by a dog in the right arm, and costochondritis. (Id. at 78, 91 & 94.) Plaintiff's application was denied initially on January 14, 2005, and upon reconsideration on June 9, 2005. (Admin. R. at 52 & 56.) As a result, Plaintiff requested an administrative hearing on August 15, 2005. (Id. at 51.) On December 12, 2007, Plaintiff had a hearing before an Administrative Law Judge ("ALJ"), Gregory M. Wilson ("ALJ Wilson"), who found on March 28, 2008, that Plaintiff was not under a disability as defined by the Social Security Act ("SSA") because there were "jobs that exist in the national economy that . . . [Plaintiff] can perform . . . ." (Admin. R. at 33–34, 443.) Thereafter, the Appeals Council denied Plaintiff's request for review on August 14, 2009, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (Id. at 5.)

Subsequently, on October 7, 2009, Plaintiff commenced an action in the United States District Court for the District of South Carolina pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the Commissioner's final decision denying Plaintiff's claim for SSI. Cook v. Comm'r of Soc. Sec., C/A No. 3:09-02618-JFA (D.S.C. Oct. 7, 2009) (ECF No. 1). On March 23, 2011, the court determined that "further administrative action is warranted before this court can determine if the ALJ's decision was supported by substantial evidence" and remanded the matter to the Commissioner. Cook, C/A No. 3:09-02618-JFA

(ECF No. 31 at 8–9).

After remand, on December 16, 2011 and November 6, 2012, Plaintiff had hearings before ALJ Wilson, who found on March 8, 2013, that Plaintiff was not under a disability as defined by the SSA because she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Admin. R. at 506, 557–58 & 566; ECF No. 17-2 at 3.) Thereafter, the Appeals Council denied Plaintiff's request for review on February 10, 2014, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (Admin. R. at 469.)

On April 9, 2014, Plaintiff commenced a second action in this court to obtain judicial review of the Commissioner's final decision denying Plaintiff's claim for SSI. (ECF No. 1.) On July 30, 2015, the Magistrate Judge issued his recommendation that the Commissioner's final decision denying Plaintiff's claims for SSI be affirmed. (ECF No. 39.) Plaintiff filed timely Objections to the Magistrate Judge's Report on September 1, 2015. (ECF No. 43.) The Commissioner filed a Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation on September 8, 2015. (ECF No. 44.)

## II.     LEGAL STANDARD

A.     The Magistrate Judge's Report

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to – including those portions to which only "general and conclusory" objections have been made – for clear error. Diamond v.

3

Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

B.     Judicial Review of the Commissioner

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. See Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." Id. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." Vitek, 438 F.2d at 1157–58.

### III.     ANALYSIS

A.     The Magistrate Judge's Review

In the Report, the Magistrate Judge addressed Plaintiff's specified contentions that ALJ

4

Wilson erred by (1) failing to properly assess Plaintiff's credibility and (2) failing to properly consider the opinions of her treating physicians. First, the Magistrate Judge summarized as follows the foundation for his conclusion that substantial evidence supported ALJ Wilson's credibility determination:

> The ALJ found that, while the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible (Tr. 515). As noted by the ALJ, the plaintiff claimed that her ailments caused her constant pain, she spent most of her time in bed, and almost any activity caused fatigue and body aches (Tr. 514, 547-48). The ALJ acknowledged that the plaintiff's numerous medications supported her allegations "somewhat" (Tr. 514) and further noted that "in cases involving conditions like fibromyalgia, subjective statements, activities of daily living, and inconsistencies in the record are significantly important" (Tr. 516). The ALJ then summarized the record in thirty pages of discussion (Tr. 517-48) and further provided eight pages of discussion explaining why the plaintiff's allegations were only "partially credible" and the weight given to the plaintiff's treating physicians' opinions (Tr. 548-56).
>
> In assessing the plaintiff's credibility, the ALJ found that the following evidence failed to support her subjective complaints: the plaintiff sought orthopedic care for her right shoulder impairment for only about four months (Tr. 512, 555); conservative treatment in the form of physical therapy greatly improved her right shoulder limitations and functioning (Tr. 512, 555); diagnostic imaging failed to fully support the plaintiff's allegations (Tr. 512, 553, 555); the plaintiff did not undergo injection into the subacromial space with Dr. Sanchez (Tr. 512, 555); she has not sought treatment with an orthopedist since 2005 (Tr. 512, 555); her last physical examination with Dr. Sanchez was relatively normal, which suggested stabilization of the right shoulder impairment (Tr. 512, 555); Dr. Sanchez did not articulate any work related limitations of function (Tr. 512, 555); despite notations of depression, anxiety, prescriptions for mental health medications, possible "fibro fog," and negative side effects from medications, Dr. Medlock confirmed in May 2005 that the plaintiff's thought processes were intact and thought content was appropriate, her mood and affect were worried and anxious, but her attention, concentration, and memory were good (Tr. 517; see Tr. 252); while Dr. Medlock noted that the plaintiff was depressed, he provided no clinical signs; Dr. Medlock advised the plaintiff to change her lifestyle, including quitting smoking, exercising vigorously, working through the pain, and getting out of the house (Tr. 521; see Tr. 259); the plaintiff had generally not carried out Dr. Medlock's recommendations; Dr. Medlock noted that the plaintiff overreacts to all situations, which was consistent with Dr. Ruffing's interpretation of test results indicating the plaintiff had a tendency to overreact to even minor problems (Tr. 521; see Tr. 259, 426) and suggests that the plaintiff exaggerates her symptoms;

> while the plaintiff often complained of swelling in her legs and feet and high pain levels, treatment notes showed "largely normal" physical exams (Tr. 522-23, 554; see Tr. 255, 371-73); Dr. Medlock advised the plaintiff to partake in an "intensive exercise program" and yoga (Tr. 523, 554; see Tr. 383); the plaintiff told Dr. Medlock that she stood and walked a great deal in helping care for her mother, which was inconsistent with her testimony that she spent most days in bed (Tr. 524; see Tr. 415); Dr. Kooistra advised the plaintiff to participate in a more active physical therapy program in a pool (Tr. 527; see Tr. 329); the plaintiff did not see Dr. Kooistra between April 27, 2010, and August 15, 2011 (Tr. 530); at the August 15, 2011, visit with Dr. Kooistra, the plaintiff rated her pain at seven out of ten, but the physical examination normal (Tr. 530; see Tr. 745-46); despite complaints of poor gripping, the plaintiff had normal grip and grasp (Tr. 522-23; see Tr. 762-63); despite complaints of pain in the right knee, the plaintiff could squat with some pain (Tr. 533; see Tr. 762-63); the plaintiff's allegations of "fibro fog" were generally inconsistent with the results of mental status exams at the consultative and independent examinations (Tr. 539); the plaintiff's statement that she needed to be dismissed from physical therapy because her "arm is fine" was inconsistent with her allegations of significant shoulder pain (Tr. 539; see Tr. 242); despite claiming that sitting and standing for more than an hour caused severe pain, the plaintiff was able to complete the MMPI-2, which takes 60 to 90 minutes to complete (Tr. 544); despite her complaints of depression 23 and recommendations to seek psychological treatment by her physicians, the plaintiff received no inpatient or outpatient psychological treatment other than psychotropic medications (Tr. 545); Dr. Patel's examination of the plaintiff revealed normal findings (Tr. 546-47; see Tr. 761-63); in June 2004, the plaintiff stated that she needed help with personal care, had problems with eating, and did little, if any chores, cooking, or shopping, which was inconsistent with the plaintiff's statements to the consultative and independent examiners that she spent time reading, working on the computer, painting, playing with her pets, walking around the yard if she was able, and that she could handle her personal needs (Tr. 548; see Tr. 124-27, 181-83, 198-200, 421-31); despite complaints of pain at a level of seven or higher, the plaintiff's blood pressure readings were "consistently relatively normal" (Tr. 553); the plaintiff sought almost monthly treatment with Dr. Tracy primarily for medication refills since 2005, indicating that the treatment was somewhat more successful than the plaintiff reported as she did not seek evaluation with another rheumatologist (Tr. 554); while the plaintiff sought treatment in the emergency room three times since 2002, treatment was conservative in each instance (Tr. 555); and the assessments of the consultative examiners and state agency physicians did not fully support the plaintiff's subjective complaints (Tr. 548-55).

(ECF No. 39 at 22–24.) The Magistrate Judge then addressed issues raised by Plaintiff about ALJ Wilson's decision without finding error regarding blood pressure readings, the support for Plaintiff provided by her primary physician's records, her compliance with her pain medication

regimen, the differences between "deliberate exaggeration" and "emotional fragility," the practicality of suggested lifestyle changes, the intermittent nature of her fibro fog, the effect of reduced shoulder pain when Plaintiff's other impairments remained, Plaintiff's lack of a claim of disability based on depression, her participation in MMIP-II testing, her daily activities, and the objective clinical observations regarding fibromyalgia that supported her subjective complaints. (Id. at 24–30.)

The Magistrate Judge next addressed Plaintiff's contention that "the ALJ failed to properly consider the opinions of her treating rheumatologist, Dr. Tracy; her primary care physician, Dr. Medlock; and her treating neurologist, Dr. Kooistra." (Id. at 30.) Upon his review, the Magistrate Judge found that ALJ Wilson "discussed Dr. Tracy's treatment notes and opinions and gave a detailed analysis of his reasons for giving the opinions little weight." (Id. at 32 (referencing Admin. R. 531–38, 554–55).) The Magistrate Judge determined that ALJ Wilson gave detailed reasons explaining why he (1) gave great weight to "Dr. Medlock's May 2005 opinion regarding the plaintiff's mental status" (see Admin. R. 252 & 517) and (2) little weight to "Dr. Medlock's treatment notes and November 2005 and March 2012 opinions . . ." (see Admin. R. at 517–25, 553–54). (ECF No. 39 at 35.) Finally, the Magistrate Judge concluded that ALJ Wilson provided proper support for his rationale in giving (1) little weight to "Dr. Kooistra's treatment notes and opinion" and (2) great weight "to Dr. Kooistra's remarks in April 2010 regarding the plaintiff's limitations due to mental impairment (Tr. 550), in which she stated that medication helped the plaintiff's depression; the plaintiff was fully oriented, had intact thought process, appropriate thought content, normal mood/affect, and good concentration and memory; and the plaintiff had only slight work-related limitations due to her mental condition (Tr. 760)." (ECF No. 39 at 37–38.)

Based on the foregoing considerations, the Magistrate Judge concluded that the Commissioner's decision was supported by substantial evidence and, therefore, recommended that the court affirm the Commissioner. (Id. at 43.)

B.   Plaintiff's Objections and the Commissioner's Response

Objections to the magistrate judge's report and recommendation must be specific. See U.S. v. Schronce, 727 F.2d 91, 94 n.4 (4th Cir. 1984) (a failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge); see also Camby, 718 F.2d at 199 (in the absence of specific objections to the report of the magistrate judge, this court is not required to give any explanation for adopting the recommendation).

In her Objections, Plaintiff set forth the following complaints regarding the Report:

Objection 1:   Credibility. In assessing a claimant's credibility the ALJ's decision must contain specific reasons for his finding, supported by the evidence in the case record. When the ALJ fails to provide adequate reasons for his credibility determination, can his decision be based on substantial evidence?

Objection 2:   Treating Physician Rule. The opinions of Cook's long-term treating rheumatologist, Dr. [Kevin] Tracy, her long-term primary physician [Dr. Melvin Medlock], and her long-term treating neurologist [Dr. Carol A. Kooistra] contain work-preclusive limitations which the ALJ improperly rejected. Where the ALJ improperly ignores the opinion evidence, can his decision be supported by substantial evidence?

(ECF No. 43 at 3 & 25.)

As to her first objection, Plaintiff disagreed with her credibility assessment by ALJ Wilson and argued that the reasons he chose to find her not credible were based on "factual inaccuracy." (Id. at 3.) Specifically, Plaintiff asserted that ALJ Wilson's decision relied on

8

misstatements of critical fact regarding, among other things, Plaintiff's blood pressure readings[1], the support for Plaintiff provided by her primary physician's records[2], her compliance with her pain medication regimen[3], the practicality of suggested lifestyle changes[4], the intermittent nature of her fibro fog[5], the effect of reduced shoulder pain when Plaintiff's other impairments remained, Plaintiff's lack of a claim of disability based on depression, her participation in MMIP-II testing[6], her daily activities[7], and the objective, clinical observations regarding fibromyalgia that support her subjective complaints[8]. (Id. at 4–24.)

In her second objection, Plaintiff asserted that the opinions of her doctors – Drs. Kevin Tracy, Melvin Medlock, and Carol A. Kooistra – supported a finding of disability, but ALJ Wilson improperly rejected those opinions under a circumstance where "[a]ll three treated

---

[1] Plaintiff asserts that "[t]he ALJ found that there were 24 normal blood pressure readings and 2 abnormal ones" when in actuality Plaintiff's "blood pressure was measured 109 times; 36 times it was normal, and 73 times it was abnormal, . . . ." (ECF No. 43 at 4–5.)

[2] Plaintiff asserts that "the exhibits cited by the ALJ to prove . . . [Plaintiff] incredible actually show Dr. Medlock's opinions of inability to work and show that Dr. Medlock felt Cook's pain was sufficient enough to consistently refill her OxyContin and OxyIR prescriptions." (Id. at 15–16.)

[3] Plaintiff contends that she has been meticulously compliant with her pain medication usage for over 10 years. (Id. at 16.)

[4] Plaintiff contends that lifestyle suggestions by her physicians were "not record evidence that her pain allegations are incredible." (Id. at 17–18.)

[5] Plaintiff asserts that ALJ Wilson and the Magistrate Judge "failed to understand the intermittent nature of her fibro fog" and such "intermittent problems can be disabling, if they interrupt work with sufficient frequency." (Id. at 18–19 (citation omitted).)

[6] Plaintiff asserts that ALJ Wilson's reference to this testing was speculative because "he could not have possibly known the particulars of . . . [Plaintiff's] testing . . . ." (Id. at 20.)

[7] Plaintiff argues that the Magistrate Judge failed to "address the fact that the ALJ was essentially comparing unrelated activity to find an inconsistency." (Id. at 22.) Moreover, Plaintiff asserts that ALJ Wilson in his decision "continued to mischaracterize or selectively describe . . . [Plaintiff's] activities, mentioning the activity, but leaving out the surrounding words that show that the activity was performed at a level consistent with disability." (Id. at 23.)

[8] Plaintiff contends that her "doctors in fact indicated that . . . [Plaintiff] had objective, clinical observations to support her subjective complaints: . . . [Plaintiff] had positive trigger points, . . . every time the number was given it was 14, . . . well over the 11 required in the listing, SSR 12-2p, 2012 WL 3104869 at *2-3, and, widespread muscle and joint pain. (Id. at 24.)

Plaintiff for similar complaints, reached similar diagnoses, prescribed similar medications, and suggested similar limitations." (ECF No. 43 at 25, 32, 38 & 42 (citation omitted).) Plaintiff further asserted that ALJ Wilson's decision should be considered deficient because he "chose to give great weight to the non-examining state agency physicians, wh[ose opinions] were made without benefit of the detailed opinions from Cook's treating physicians." (Id. at 43–44 (citing, e.g., Rogers v. Colvin, No. 0:12-2210-MGL, 2014 WL 1330088, at *4 (D.S.C. Mar. 31, 2014) ("As it appears, the non-examining sources, did not have the benefit of all the medical opinions prior to issuing their opinions, the court is unable to discern from the present record whether the ALJ's decision is supported by substantial evidence.")).)

Additionally, Plaintiff attempted to communicate to the court reasons for why ALJ Wilson improperly found her doctors to be not credible. First, Plaintiff addressed ALJ Wilson's treatment of her Rheumatology Specialist, Dr. Kevin Tracy. In this regard, Plaintiff argued that she should not be penalized because Dr. Tracy failed "to keep detailed and legible notes" either diagnosing Plaintiff's fibromyalgia or identifying her specific limitations or the side effects of prescribed medication. (Id. at 26–27 & 29.) Plaintiff further argued that her treatment by Tracy was appropriate for fibromyalgia and she "should not be penalized for following the treatment regimen set out by a specialist who is trained specifically to treat her condition which is precisely what will happen if the ALJ's decision stands." (Id. at 31 (citation omitted).)

As to ALJ Wilson's consideration of Dr. Melvin Medlock, her primary physician, Plaintiff asserted that Dr. Medlock's opinions were not incredible even though he (1) noted some element of depression contributing to Plaintiff's problems, (2) indicated Plaintiff's problems were not solved with narcotics, and (3) gave opinions on "vocational or legal conclusions reserved to the Commissioner." (Id. at 32–34.) Plaintiff also asserted that ALJ Wilson should

not have deemed Dr. Medlock's opinions unreliable just because he continuously prescribed Plaintiff "strong narcotic medications to help with her severe fibromyalgia pain[,]" he failed to document tender point during Plaintiff's appointments, he "admitted that he did not in recent years treat the plaintiff for her main ailments[,]" and his lifestyle suggestions were ignored by Plaintiff. (Id. at 35–38.)

Finally, Plaintiff argued that the opinions of her Neurologist, Dr. Carol A. Kooistra, should not have been found to be incredible even though she (1) failed to document Plaintiff's tender points at every visit, (2) maintained Plaintiff's prescribed medication treatment regimen, (3) kept notes that did not reflect Plaintiff's disabling pain, and (4) mistakenly diagnosed Plaintiff with myofascial pain. (Id. at 38–42.)

Based on her foregoing complaints, Plaintiff requested that the court set aside the Report and remand the matter to the Commissioner. (Id. at 45.)

In response to Plaintiff's Objections, the Commissioner asserted that the Magistrate "summarized the evidence in detail" and appropriately rejected "Plaintiff's arguments that the ALJ failed to properly assess her credibility and failed to properly consider the treating physician opinions . . . ." (ECF No. 44 at 2; see also id. at 3–5.) Moreover, the Commissioner asserted that "Plaintiff's objections are without merit" because substantial evidence supports ALJ Wilson's credibility determination and his rationale for discounting the weight of Plaintiff's physicians: Drs. Tracy, Medlock, and Kooistra. (Id. at 3; see also id. at 4–5.) Accordingly, the Commissioner prayed that the court "overrule Plaintiff's objections, adopt Magistrate Judge McDonald's thorough and correct Report and Recommendation, and affirm the ALJ's decision." (Id. at 6.)

C.     The Court's Ruling

Upon review of the Report, the court finds that the Magistrate Judge performed a thorough analysis of the record. In her Objections, Plaintiff merely rehashes arguments that were properly considered and rejected by the Magistrate Judge. (Compare ECF No. 39 at 24–30 and ECF No. 43 at 4–24.) "The Court may reject perfunctory or rehashed objections to R & R's that amount to 'a second opportunity to present the arguments already considered by the Magistrate–Judge.'" Felton v. Colvin, C/A No. 2:12-cv-558, 2014 WL 315773, at *7 (E.D. Va. Jan. 28, 2014) (quoting Gonzalez–Ramos v. Empresas Berrios, Inc., 360 F. Supp. 2d 373, 376 (D.P.R. 2005)). For the reasons that follow, the court overrules Plaintiff's Objections because they do not suggest any new arguments that would cause the court to reject the Magistrate Judge's analysis and recommendation.

*1. Whether Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Credibility*

When determining credibility, "[f]irst, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F. 3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). Once the threshold determination has been met, the intensity and persistence of the plaintiff's pain and the extent to which it affects her ability to work are then evaluated. Id. at 595. "Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings . . . any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), . . . and any other evidence relevant to the severity of the impairment, such as

12

evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, see 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3)." Id. at 595. "Credibility is the providence of the ALJ." Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1499 (10th Cir. 1992). When an ALJ has given specific, legitimate reasons for disbelieving a plaintiff's testimony, the reviewing court should "generally treat credibility determinations made by an ALJ as binding upon review." Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988).

As the Magistrate Judge detailed in the Report (ECF No. 39 at 22–24), ALJ Wilson specifically conducted the two-step analysis. ALJ Wilson found that "while the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible." (Admin. R. at 515.) ALJ Wilson then proceeded to consider Plaintiff's statements, her treatment history, her medications, her activities of daily living, and the opinion evidence as required by the regulatory scheme. (Id. at 517–56.) In this regard, ALJ Wilson concluded that "[w]hile the medical evidence establishes that . . . [Plaintiff] has been treated for a variety of symptoms associated with the alleged impairments, the complaints are never fully substantiated by the evidence in the record as a whole, and the lack of substantiating evidence detracts from . . . [Plaintiff's] credibility." (Id. at 556.) Plaintiff's criticisms of this finding are more a disagreement with ALJ Wilson's conclusion, rather than a valid objection to ALJ Wilson's analysis method. As such, the court overrules Plaintiff's Objections, agrees with the Magistrate Judge that "the ALJ's credibility analysis is based upon substantial evidence and without legal error" (ECF No. 39 at 30), and accepts the Magistrate Judge's recommendation on this point.

### 2. *Whether Substantial Evidence Supports the Weight Accorded to the Opinions of Plaintiff's Physicians*

If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted." Social Security Ruling ("SSR") 96–2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996); see also 20 C.F.R. § 416.927(c)(2).[9] Section 416.927(c) provides that, if a treating source's opinion is not accorded controlling weight, the ALJ is required to consider "all of the following factors in deciding the weight we give to any medical opinion":  (1) examining relationship ("[g]enerally, we give more weight to the opinion of a source who has examined you than the opinion of a source who has not examined you"); (2) treatment relationship, including length of treatment relationship, frequency of examination, and the nature and extent of the treatment relationship; (3) supportability ("[t]he more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion"); (4) consistency; (5) specialization; and (6) other factors.  Id.  "However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that 'an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision."  Kirby v. Colvin, No. 4:13-cv-3138-DCN, 2015 WL 1038036, at *3 (D.S.C. Mar. 10, 2015) (quoting Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010)); see 20 C.F.R. § 416.927(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion).  "A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up

---

[9] As it relates to SSI, "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  20 C.F.R. § 416.927(c)(2).

'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion." Id. (quoting Craft v. Apfel, No. 97-2551, 1998 WL 702296, at *2 (4th Cir. Oct. 6, 1998) (per curiam) (unpublished table decision) (internal citation omitted).

In his decision, ALJ Wilson provided the following summaries to explain the rationale for his decision regarding the weight accorded to Drs. Medlock, Tracy, and Kooistra:

> The discussion of the records from Dr. Medlock indicates that the claimant successfully participated in and completed physical therapy within a relatively short period between April and June 2005. The diagnostic imaging of the claimant's shoulder was not particularly abnormal. Dr. Sanchez was pleased with the improvement in the right shoulder that he dismissed the claimant from care after only about four months. The clamant suffered an injury to the right shoulder and she regularly complained of pain in the right shoulder and due to fibromyalgia, but Dr. Medlock and Dr. Ruffing both have suggested that the claimant exaggerates her symptoms and overreacts to minor problems. Dr. Medlock has not consistently recorded clinical signs consistent with significant depression and anxiety, although he had diagnosed anxiety and prescribed Diazepam, for example. Some of Dr. Medlock's records suggest that the claimant might take more than the recommended amount of narcotic analgesics. Dr. Medlock is a primary care physician rather than an orthopedist, neurologist, or rheumatologist. Dr. Medlock has treated the claimant conservatively with narcotic analgesics, despite his recognition that he was doing her no good giving her nothing but narcotics for pain. The claimant began treatment with a rheumatologist in about June 2005, which is more than two years after the claimant sought treatment with Dr. Medlock for complaints of fibromyalgia-like pain. Dr. Medlock does not consistently articulate his basis for diagnosing fibromyalgia in terms of tender points above and below the waist and on both sides of the body. Dr. Medlock advised the claimant that she needed a change in lifestyle, including quitting smoking, exercising vigorously, working through the pain, and getting out of the house. On some instances, the claimant stated that her medications helped. Despite her complaints of pain at a level of 7 or higher, her blood pressure readings were consistently relatively normal. Dr. Medlock does not articulate observations or abnormal clinical signs consistent with decreased cognitive function, alteration of mental status, nonrestorative sleep, or fatigue. Despite the claimant's subjective reports, Dr. Medlock noted relatively minimal edema in the lower extremities and little evidence of DVT and lymphadenopathy, overall. Dr. Medlock advised the claimant to exercise and attend yoga, which are activities somewhat inconsistent with the claimant's reported activity level. Dr. Medlock generally maintained the medications pertaining to fibromyalgia at several visits until July 2012 when the treatment record suggests that the primary care physicians no longer wished to prescribe narcotic analgesics.

>Dr. Kooistra is a neurologist, but not a rheumatologist, and although she treated the claimant's pain from fibromyalgia, in general, rheumatology is the relevant specialty for fibromyalgia.  On some occasions, the claimant adjusted her medications without first seeking advisement from Dr. Kooistra. On some occasions, Dr. Kooistra does not list a diagnosis of fibromyalgia or she provides alternative diagnoses that could account for the alleged symptoms. On some occasions, Dr. Kooistra generally maintains the medication regimen, which suggests that the medications were somewhat helpful.  The continuation of the medications is consistent with the claimant's remarks that she is stable or the lack of additional complaints at some visits. Dr. Kooistra does not consistently document positive findings for the tender points, and other than the initial visit in August 2002, she does not describe the tender points as being on both sides of the body and above and below the waist.  Despite the complaints of pain, the claimant's blood pressure was normal throughout the treatment sessions, and despite the complaints of pain, Dr. Kooistra's records do not consistently also contain complaints of decreased cognitive function, alteration of mental status, nonrestorative sleep, or fatigue, for example. Similarly, Dr. Kooistra does not articulate observations or abnormal clinical signs consistent with decreased cognitive function, alteration of mental status, nonrestorative sleep, or fatigue. The neurological exams were generally unremarkable, and Dr. Kooistra does not consistently report observations of edema, although she did suggest that the claimant gained weight secondary to her medications.  Dr. Kooistra suggested that the claimant increase her activity level. Dr. Kooistra does not consistently report abnormal findings or observations regarding the right upper extremity after about 2005.
>
>Dr. Tracy's records, as discussed above, indicate that the claimant has sought almost monthly treatment with Dr. Tracy since about June 2005.  At almost each visit, the claimant complains of pain at a level of eight or nine.  The combination of consistent subjective reports of pain and the regular monthly visits to Dr. Tracy, as well as the length of treatment supports the claimant's allegations and Dr. Tracy's statements somewhat.  However, the length and type of treatment also support the findings in the decision.  For instance, the monthly visits are primarily for refills of medications and the claimant has sought treatment with Dr. Tracy for more than six years.  The consistent monthly refills of medications and the seeking of treatment with Dr. Tracy for several years suggests that the claimant is somewhat satisfied with the effectiveness of Dr. Tracy's treatment.   It is somewhat inconsistent that the claimant would subjectively report pain at a level of eight or nine for more than six years and not seek evaluation or treatment with another rheumatologist, if the treatment was not somewhat more successful than the claimant has reported.  In the same way, it is somewhat inconsistent that Dr. Tracy would not refer the claimant for evaluation with another physician if the treatment of more than six years were not somewhat more successful than the claimant has reported.

(Admin. R. at 553–55.)

Upon consideration of the aforementioned summaries explaining the weight accorded to the opinions of Plaintiff's physicians, the court is persuaded that ALJ Wilson's conclusions sufficiently meet the requirements of SSR 96–2p and 20 C.F.R. § 416.927(c)(2). In this regard, the court finds that ALJ Wilson clearly identified the reasons supporting his decision to not give the opinions of Drs. Medlock, Tracy, and Kooistra controlling weight. (See Admin. R. 517–556.) Plaintiff's Objections are essentially an invitation for the court to reweigh the evidence and come to its own conclusion. Such reweighing of the evidence is not within the province of the court. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (holding that a reviewing court should not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ). Accordingly, the court overrules Plaintiff's Objections and agrees with the Magistrate Judge that substantial evidence supports ALJ Wilson's findings as to the weight accorded to Plaintiff's specified physicians.

## IV.     CONCLUSION

Upon careful consideration of the entire record, the court **AFFIRMS** the final decision of the Commissioner denying Plaintiff's claim for Supplemental Security Income. The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 39) and incorporates it herein by reference.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 30, 2015
Columbia, South Carolina

17